UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**ERRICK EVANS**
*individually and on behalf of all*
*those similarly situated*,

Case No.: 5:26-cv-00275-SPC-PRL

      Plaintiff,

v.

**ADVENTIST HEALTH
SYSTEM/SUNBELT INC D/B/A
ADVENTHEALTH and NORTH
AMERICAN CREDIT SERVICES INC,**

      Defendants.

_____/

## ADVENTHEALTH'S MOTION TO DISMISS

Defendant, ADVENTIST HEALTH SYSTEM/SUNBELT INC D/B/A ADVENTHEALTH ("AdventHealth"), by and through its undersigned counsel and pursuant to Federal Rules of Civil Procedure 8, 10 and 12(b)(6), hereby moves this Court to dismiss the Complaint filed by the Plaintiff, ERRICK EVANS (the "Plaintiff"), and in support states:

## INTRODUCTION

Firstly, AdventHealth is not an appropriate party. Adventist Health System/Sunbelt Inc. does not own the fictitious name, "AdventHealth". Moreover, Adventist Health System/Sunbelt Inc. nor the fictitious name AdventHealth are not identified on any exhibit attached to the Complaint as the entity who provided

1

healthcare services to the Plaintiff. In contrast, the Plaintiff has not named the original creditor identified on Exhibit A to the Complaint as a party.

Furthermore, Plaintiff cannot state a cause of action on which relief can be granted. Plaintiff's Complaint against AdventHealth contains two counts: (3) Violation of Fla. Stat §559.72(9) and (4) Violation of Fla. Stat. §559.72(5). Plaintiff alleges in his Complaint that AdventHealth knew that the treatment provided to Plaintiff was related to a work-injury and knew that it did not have entitlement to collect the debt when NACS, not AdventHealth, allegedly sent one statement to Plaintiff. Plaintiff does not and cannot allege North American Credits Services, Inc. ("NACS") is AdventHealth's agent such that AdventHealth can be held vicariously liable for NACS' wrongful conduct. The allegations are insufficient to show that AdventHealth had actual knowledge that it did not have entitlement to collect the debt when the NACS allegedly sent the one statement attached as Exhibit A.  As discussed below, these deficiencies are incurable and Counts 3 and 4 should be dismissed with prejudice.

## ARGUMENT

### I.   Legal Standard

#### a. 12(b)(6) Pleading Standard

To survive dismissal under *Fed. R. Civ. P.* 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere labels and conclusions or a formulaic recitation of the elements of a cause of action are not

2

sufficient, and bare assertions are not "entitled to be assumed true." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 678 (2009). A complaint suggesting only the "mere possibility" of misconduct must therefore be dismissed. *Iqbal*, 556 U.S. at 679; *See also Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). A claim is facially plausible where the facts alleged permit the court to reasonably infer that the defendant's alleged misconduct was unlawful. *Iqbal*, 556 U.S. at 678. However, factual allegations that are "merely consistent with a defendant's liability" are not facially plausible. *Id*. A complaint does not suffice if it tenders "naked assertions devoid of further factual enhancement." *Id*.; *Hearn v. Int'l Bus. Mach.*, 588 Fed. Appx. 954, 957 (11th Cir. 2014). *See Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937 (2009) (Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement"). On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Id*. The factual allegations must be enough to raise a right to relief above the speculative level. *Id*.

The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ashcroft*, 556 U.S. 662. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*. Two working principles underlie the decision in *Twombly*. *Id*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. Threadbare recitals of the elements

3

of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id.* In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft*, 556 U.S. 662.

In essence, the complaint must "contain enough facts to state a claim to relief that is plausible on its face. *Hayes v. U.S. Bank Nat. Ass'n*, 2016 WL 1593415 (11th Cir. 2016)(citing *Twombly*). In *Hayes*, the District Court determined that the Plaintiffs' RESPA claim failed because the details about the content of their "qualified written requests" were not plead. *Id.* The District Court also found that the Plaintiffs' FDCPA claims failed because the complaint only contained a paraphrasing of the statutory language without factual support for the claims. *Id.* The plaintiffs', there, bore the burden of alleging sufficient facts that would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged and the Court held that the complaint failed because the factual allegations were insufficient. Here, counts 3 and 4 against AdventHealth do not contain sufficient factual support for the allegations made but rather contains bare legal conclusions that a statutory violation occurred. Moreover, Exhibit A contradicts the allegations of the Complaint that AdventHealth is the original creditor. Therefore, the Complaint should be dismissed.

4

### *b.* **Rule 8 and 10 Pleading Standards**

*Fed. R. Civ. P.* 8(a)(2), requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Plaintiff's allegations "must be simple, concise, and direct." *Fed. R. Civ. P.* 8(e)(1). It also demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

*Fed. R. Civ. P.* 10 similarly mandates that a complaint "state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and that "each claim founded on a separate transaction or occurrence ... be stated in a separate count" to the extent doing so "would promote clarity." *Anesha Parker v. Roseberte Clervil, et. al.,* 2022 WL 22863714, at *3 (M.D. Fla. 2022). Rules 8 and 10 "work together to require the pleader to present claims discretely and succinctly, so that the adversary can discern what the plaintiff is claiming and frame a responsive pleading, and so that a court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Id*. (*citing Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996).

## II.   Plaintiff Has Named The Incorrect AdventHealth Entity

AdventHealth is not the proper defendant and is not the healthcare provider that provided services to the Plaintiff. There is no factual support for a claim against AdventHealth, that AdventHealth provided any services to the Plaintiff, or that

AdventHealth attempted collection of any debt (owed to it or otherwise). Firstly, as a matter of public record, Adventist System/Sunbelt, Inc. does not own the fictitious name, "AdventHealth." See Exhibit A.[1] The named defendant is also not the medical provider. Moreover, Exhibit A to the Complaint does not identify AdventHealth as the facility that actually provided healthcare services to the Plaintiff. A separate and distinct entity is identified as the original creditor on Exhibit A[2]. Therefore, Plaintiff's claims against AdventHealth should be dismissed.

In pleadings, the corporate name must be strictly used. *RHPC, Inc. v. Gardner*, 533 So. 2d 312, 314 (Fla. 2d DCA 1988). If the proper defendant is a fictitious entity, the plaintiff is required to name the fictitious entity and to otherwise name the defendant using the correct corporate name. Under Florida law, a defendant has the right to be accurately named in the process and pleadings of the court. *See Roberts v. Michaels*, 219 F.3d 775 (8th Cir. 2000). Accordingly, this case should be dismissed because it was filed against an improper and/or improperly named party.

---

[1] See the Florida Department of State, Division of Corporations Fictitious Name Detail. A district court, on a motion to dismiss, may take judicial notice of relevant public documents of undisputed authenticity. *Johnson v. City of Atlanta*, 107 F. 4th 1292, 1300 (11th Cir. 2024); *Hi-Tech Pharms, Inc. v. HBS Int'l Corp.*, 910 F. 3d 1186, 1189 (11th Cir. 2018). AdventHealth requests that the Court take judicial notice of the materials in the attached Schedule of Exhibits pursuant to Rule 201, Federal Rules of Evidence.

[2] AdventHealth Ocala is identified as the original creditor.

### III.   Plaintiff Fails to State a Cause of Action for a Violation of the FCCPA Against AdventHealth

#### a. Count 3 - Section 559.72(9) is not sufficiently pled

##### i.  There is no apparent agency

In Count 3, Plaintiff alleges AdventHealth is vicariously liable for NACS' alleged violation of section 559.72(9), Fla. Stat., because NACS "acted with apparent authority in attempting to collect the Consumer Debt on AdventHealth's behalf." (Compl., ¶ 103).  However, under Florida law,[3] to establish vicarious liability through apparent agency, a plaintiff must allege: "(1) a representation by the purported principal; (2) a reliance on that representation by a third party; and (3) a change in position by the third party in reliance on the representation." *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1312 (11th Cir. 2019) (quoting *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995)); *see also Benson v. Seestrom*, 409 So. 2d 172, 173 (Fla. 2d DCA 1982) ("Apparent authority must be the result of acts or omissions by the principal in order to subject the principal to liability for the agent's actions."); *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 32 (Fla. 2d DCA 2011) ("In addition, the third party's reliance on the purported agent's apparent authority must be reasonable.").

---

[3] "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Posen Const., Inc. v. Lee County*, 921 F. Supp. 2d 1350, 1356 (M.D. Fla. 2013) (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

Here, the only allegations of the relationship between AdventHealth and NACS are found in Paragraphs 50 and 102 of the Complaint where Plaintiff baldly calls NACS AdventHealth's agent and that it acted with apparent authority. Given there are no factual allegations to support the elements for apparent agency, Plaintiff fails to state a cause of action for vicarious liability against AdventHealth in Count 3.

### ii. There is no actual knowledge

Assuming, *arguendo*, Plaintiff cleared the apparent agency allegation hurdle, Count 3 should still be dismissed with prejudice because Plaintiff cannot allege the requisite elements for a violation of section 559.72(9).

To state a cause of action for a violation of section 559.72(9), Fla. Stat., a plaintiff must show a nonexistent legal right was asserted and that the person had actual knowledge the right did not exist. *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1312 (S.D. Fla. 2009). "The statute does not provide for recovery if the creditor merely should have known the debt was not legitimate." *Cornette v. I.C. Sys., Inc.*, 280 F. Supp. 3d 1362, 1371 (S.D. Fla. 2017) (quoting *Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 6 (Fla. 4th DCA 2009)); *see also McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008) (stating "[i]t is well established that the FCCPA requires proof that the defendant had actual knowledge of the impropriety; constructive knowledge is insufficient.").

A patient who is a workers compensation claimant must provide accurate information to enable a hospital to submit a claim to either an employer or an insurance carrier. *See Del Valle v. Adventist Health System/Sunbelt, Inc. d/b/a Florida*

8

*Hospital Heartland Medical Center*, FLWSUPP 2708VALL (Fla. 10th Cir. Ct. 2019) (citing *Guardian Detective & Sec. Agency v. Schreyer*, 489 So. 2d 1186, 1188 (Fla. 1st DCA 1986)). Moreover, under the FCCPA, a hospital does not have actual knowledge that it does not have the right to collect a debt arising from medical services provided for work-related injuries until it is informed that either the employer or the workers compensation carrier accepted responsibility for the medical bills. *Id.* (holding trial court properly applied section 559.72(9) when it found the plaintiff's statement to emergency room doctors that he was injured at work was insufficient to impute actual knowledge, which required a showing that AdventHealth knew the employer or workers compensation had accepted responsibility for the medical bills at the time it sent the allegedly offending statements).

Like the plaintiff in *Del Valle*, Plaintiff alleges that "At the time AdventHealth provided its respective medical services to Plaintiff, Plaintiff informed AdventHealth that the sought treatment was for the Work-Injury," "AdventHealth knew the treatment it provided to Plaintiff was for the treatment of the Work-Injury because Plaintiff told AdventHealth the injury was work related," "AdventHealth knew the treatment it provided to Plaintiff was for the treatment of the Work-Injury because AdventHealth reviewed Plaintiff's medical records and history before providing treatment to Plaintiff, whereby said medical records and history made clear Plaintiff was seeking treatment for the Work-Injury," and "AdventHealth knew the treatment it provided to Plaintiff was for the treatment of the Work-Injury because, in providing the subject medical services to Plaintiff, it contemporaneously recorded in Plaintiff's

9

medical records that the treatment was for the Work-Injury." (Compl., ¶ 20-23). However, the Plaintiff attached no documentation to support his contention and direct reference to medical records.

Even if Plaintiff's allegations regarding actual knowledge were true, merely informing AdventHealth that an injury happened at work, without more, is insufficient to allege AdventHealth had actual knowledge that it did not have a legal right to collect the debt. This is because not every worker is covered by workers compensation, such as "[a]n independent contractor who is not engaged in the construction industry." Fla. Stat. § 440.02(18)(d)(1). And not every injury an employee suffers at work is covered by workers compensation. *See* Fla. Stat. § 440.09(3) ("Compensation is not payable if the injury was occasioned primarily by the intoxication of the employee; by the influence of any drugs . . . not prescribed by a physician; or by the willful intention of the employee to injure or kill himself, herself, or another."). But even if the worker falls within the ambit of the Workers Compensation Act, the "injury, its occupational cause, and any resulting manifestations or disability must be established to a reasonable degree of medical certainty, based on objective relevant medical findings, and the accident compensable injury must be the major contributing cause of any resulting injuries." Fla. Stat. § 440.09(1).

Simply put, workers' compensation coverage is either determined by the employer, workers compensation carrier, or a court. Notably absent from the Complaint are any non-conclusory allegations that AdventHealth had actual knowledge that it did not have a right to collect a debt arising out of the services it

10

provided to Plaintiff for her "Work-Injury" because it knew Plaintiff's employer or workers compensation carrier had accepted responsibility for the debt.

As held in *Del Valle*, the healthcare provider cannot violate section 559.72(9) until it has actual knowledge that Plaintiff's employer or workers compensation carrier accepted responsibility for the debt.[4]  Thus, even assuming NACS acted with apparent authority when it sent the Collection Letter to Plaintiff, AdventHealth was properly asserting its legal right to collect the debt when it sent the account to NACS for collections.

Plaintiff also interestingly alleges that Section 440.13(13)(a), *Florida Statutes*, provides "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter." (Compl., ¶ 28).  This is misleading because that section only applies to providers authorized by the employer or workers compensation carrier under the statute and there are circumstances where even an authorized provider may collect directly from the injured employee.  *See generally Marine Max v. Blair*, 268 So. 3d 839, 843 (Fla. 1st DCA 2019) (noting that section 440.13(13)(a), Fla. Stat., provides **authorized providers** "have recourse against the employer or carrier for payment for services rendered in accordance with this chapter."); *Holiday Inn v. Johnson*, 719 So. 2d 942, 943 (Fla. 1st DCA 1998) (holding employee was not entitled to reimbursement for treating with a

---

[4] *Del Valle* did not involve a Motion to Dismiss, but it does set forth the standard of what is required for a hospital like AdventHealth to have actual knowledge that a debt arising from a work-related injury is illegitimate.

11

physician that was not authorized by the employer).  Florida law does not permit patients to avoid paying their medical bills simply by telling their treaters that their injuries were "work-related."  Actual knowledge that the debt is illegitimate or that a non-legal right was asserted requires more.

Because Plaintiff cannot sufficiently allege that AdventHealth had actual knowledge that his employer or workers compensation carrier accepted responsibility for his debt when it sent the account to NACS, Count 3 against AdventHealth should be dismissed with prejudice.  *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.").

### b.  Count 4 - 559.72(5) is not sufficiently pled

Plaintiff has also failed to state a cause of action, insufficiently asserting bare legal conclusions for his Section 559.72(5) claim. Section 559.72(5), *Florida Statutes*, states that no person shall "[d]isclose to a person other than the debtor . . . information affecting the debtor's reputation, whether or not for credit worthiness . . . *with knowledge or reason to know* that the other person does not have a legitimate business need for the information or that the information is false." *Pucci v. Specialized Loan Servicing, LLC*, 2017 WL 11633015, *4 (M.D. Fla. 2017) (quoting *Laughlin v. Household Bank, Ltd.*, 969 So. 2d 509, 514 (Fla. 1st DCA 2007)).  "Reputation is what is reported or understood from reports to be the community's estimate of the person's character." *Alecca v. AMG Managing Partners, LLC*, 2014 WL 2987702, *7 (M.D. Fla. 2014)

(quoting *Heard v. Mathis*, 344 So. 2d 651, 655 (Fla. 1st DCA 1977)). Thus, to show a violation of Section 559.72(5), the Plaintiff must also show that AdventHealth knew or had reason to know that the information shared was for an illegitimate purpose or false.

Here, Plaintiff cannot allege that AdventHealth knew or had reason to know that NACS does not have a legitimate business need for information about the Consumer Debt or that the information was false, as he alleges in Paragraphs 31 and 109, because NACS is a collection agency whose business is to collect consumer debts as alleged in Paragraph 7. Furthermore, Plaintiff cannot articulate how AdventHealth's disclosure of the Consumer Debt to NACS, a Tennessee corporation, was detrimental to his reputation in his local community in Florida. *See Heard*, 344 So. 2d at 654 (holding for there to be a violation of section 559.72(5), there must be "a showing that the debtor's reputation was adversely affected following the publication"); cf. *Alleca*, 2014 WL 2987702 at *7 (finding that a communication to an employer raises an inference that it affected the employee's reputation); *Berg v. Merchants Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1340 (S.D. Fla. 2008) (finding that the plaintiff stated a cause of action for violation of section 559.72(5) by alleging that the defendant disclosed "information to [the plaintiff's] neighbor and girlfriend among others [and] that those third persons did not have a legitimate business need for the information[.]").

Finally, Plaintiff alleges AdventHealth disclosed false information to NACS. (Compl. ¶¶ 31 and 110). The alleged falsity of this information is contradicted by other

13

allegations in the Complaint which show the information was true. For example, Plaintiff alleges the Consumer Debt exists and that it was in fact the responsibility of Plaintiff's employer and/or the insurance carrier of the employer. However, if it was the responsibility of Plaintiff's employer and/or the insurance carrier of the employer, *Del Valle*, supra, requires that AdventHealth must be informed that they accepted responsibility before AdventHealth has actual knowledge that it no longer has a right to collect the debt from Plaintiff. As a result, Plaintiff fails to state a cause of action against AdventHealth for violating section 559.72(5). Amendment is futile based on these facts and Count 4 should be dismissed with prejudice.

## IV.    Plaintiff does not have standing because Plaintiff does not allege a concrete injury in fact.

Plaintiff does not have standing because Plaintiff fails to allege a concrete injury in fact.  The Court must first determine whether it has subject matter jurisdiction over the case or controversy, that is, whether the plaintiff has brought a claim that is "appropriately resolved through the judicial process." *Teage v. Credit Control, LLC*, 2021 WL 3207599 (M.D. Fla. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must have standing for the Court to have subject matter jurisdiction under Article III. *Id.* "Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.*" Id. (citing Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)). A plaintiff has standing when she has "(1) suffered an injury in fact, (2) that is fairly traceable to the

14

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id. (citing Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

An injury in fact cannot arise in cases where the plaintiff has experienced "no harm." *Id*. The injury must be " 'concrete' " and "must actually exist." *Id*. at 1548. Determining whether a plaintiff has standing "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Id. (citing Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006)). However, the Court may rely upon more than just "the complaint alone;" it can also examine "the complaint plus undisputed facts evidenced in the record; or ... the complaint plus undisputed facts plus the court's resolution of disputed facts." *Id*. (*citing Jones v. Salvation Army*, 2019 WL 6051437 (M.D. Fla. 2019)).

Where a plaintiff has a concrete injury that lacks a legal remedy, Congress may authorize her claim via statute. *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020)(Congress can "elevat[e] to the status of legally cognizable injuries concrete, <u>de facto</u> injuries that were previously inadequate in law."). But then "federal courts must [still] decide for themselves whether applicable statutes are consistent with the Constitution" and whether a plaintiff has Article III standing sufficient to confer federal jurisdiction. *Trichell*, 964 F.3d at 999. A statutory violation does not automatically give a plaintiff standing. *Id*.

Under *Trichell*, regardless of whether a debt collector's conduct was legal, the victim of an illegal debt collection has standing only if she was really injured. *Teage*, 2021 WL 3207599. While the injury need not be financial—that she paid an amount

she otherwise would not have—it needs to be concrete. *Id*. A plaintiff who merely feels "offense that a private party has violated the FDCPA" does not have an actual injury concrete enough for Article III standing. *Id*. For instance, even "[M]isrepresentations [that violate the FDCPA] are not actionable absent reliance and ensuing damages." *Id*. In *Trichell*, two plaintiffs alleged that debt collectors' statements were misleading under the FDCPA. *Id*. But the plaintiffs did not allege that they themselves had been misled or were at risk of actual harm from the letters. *Id*. The court noted that "any risk that the letters may have posed to them had dissipated by the time they filed suit," as they had counsel and were well-informed not to pay the debt. *Id*. Because neither plaintiff argued a "particularized injury" to themselves, the plaintiffs in *Trichell* lacked standing to be the named plaintiffs in a federal class action under the FDCPA. *Id*. This is the exact same situation here, where Plaintiff is alleged to have had workers compensation counsel who could have explained the legal obligations involved in this case and could be the very reason the Plaintiff did not act in reliance of any statement or pay anything.

In *Teage*, the plaintiff's allegations of harm and injury were even more threadbare than those in *Trichell*. 2021 WL 3207599. The extent of Teage's allegation of injury in the Complaint was: "As a result of Defendants' deceptive, misleading and unfair debt collection practices, Plaintiff has been damaged." *Id*. Pleadings require more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. To have standing, a plaintiff must demonstrate the "bedrock elements of reliance and

16

damages...." *Id*. Opening a letter with potentially misleading fine print is not a concrete injury. *Id*. The plaintiff must "have been <u>misled</u>." *Id*. Teage did not allege that she was deceived by the letter from Credit Control and her allegation of injury was insufficient to confer standing. *Id*. (dismissing the complaint); *See Ruffin v. Dynamic Recovery Sols., LLC*, 2020 WL 6134666 (M.D. Fla. 2020) ("[b]ecause the plaintiff did not allege 'she was affected in any meaningful way by the letter,' she had not established 'any particularized injury' and lacked standing.").

A mere statutory violation, without a showing of a concrete and particularized injury, is insufficient to convey standing. *Ruffin v. Dynamic Recovery Sols., LLC*, 2020 WL 6134666 (M.D. Fla. 2020). The Eleventh Circuit does not recognize an "anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury." *Id*. (dismissing the complaint for lack of standing). These cases are often brought for the non-salutary purpose of squeezing a nuisance settlement and a pittance of attorneys' fees out of a collection company, which it will often find cheaper to pay than to litigate. *Barclift v. Keystone Credit Services, LLC*, 585 F. Supp. 3d 748 (E.D. Pa. 2022). This type of litigation has turned "into a glorified game of 'gotcha,' with a cottage industry of plaintiffs' lawyers filing suits over fantasy harms the statute was never intended to prevent." *Id*. (dismissing the complaint for lack of standing). These laws are a shield to protect debtors from unethical and illegal debt collectors; it is not a sword to be wielded to force defendants to pay plaintiffs who have not suffered. *Ruffin,* 2020 WL 6134666. Perhaps equally troubling "is how the courts have become coopted by the lawyers in their insatiable pursuit of attorney's fees," given that "there is little or no

17

incentive for lawyers in fee-shifting situations to resolve a case before rushing to the courthouse. *Malden v. Wings Over Emerald Coast Inc.*, 2019 WL 1245866 (N.D. Fla. 2019)(denying plaintiff's fee request for fees when no effort was made to resolve the case prelitigation and the amount in controversy was minimal).

Florida trial courts have likewise rejected pleadings that allege bare statutory violations unaccompanied by any concrete harm. *Scott v. Collecto, Inc.*, 2024 WL 1178353 (Fla. 8th Cir. Co. Ct. Feb. 27, 2024) (dismissing complaint for lack of standing)[5]; *Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1205 (Fla. 3d DCA 2023)(Finding no standing where plaintiff claimed, "the texts constituted a 'barrage of messages,'" which "caused him 'to incur repeated aggravation by annoying him'" and that "the texts 'invaded his privacy, intruded upon his seclusion.'"); *Ostiguy v. Radius Global Solutions, LLC*, 2023 WL 8468554 (Fla. 1st Cir. Co.Ct. Nov. 17, 2023) (dismissing FDCPA and FCCPA claims for lack of standing[6]; *Brown v. AdventHealth Winter Garden*, 2024-CC-002275 (Fla. 9th Cir., July 25, 2024) (dismissing complaint for failing to adequately allege a consumer debt and failure to demonstrate standing); *Warner v. Goldman Sachs Bank USA*, 05-2024-SC-026875 (Fla. 18th Cir. November 4, 2024) (Granting summary disposition in favor of the FCCPA defendant in part because the plaintiff failed to demonstrate standing based on the lack of an injury in fact); *Macias v. Ocwen Loan Servicing*, LLC, 2016 WL 5886799 (Fla.6th Cir. October 5,

---

[5] "Here, plaintiff attempts to allege pure technical statutory violations, but no resulting injury whatsoever."

[6] While noting: "Here, plaintiff alleges purely statutory violations of the FDCPA and FCCPA, but does not allege any resulting injury or material risk of harm whatsoever."

2016)(granting defendant summary judgment because the Plaintiff could not satisfy the "injury-in-fact" requirement by alleging "a bare procedural violation, divorced from any concrete harm under RESPA); *Davis v. Professional Parking Management Corp.*, No. 22-14026 (11th Cir. 2023) (Affirming in Part the dismissal of FDCPA claim for lack of standing, but remanding for the dismissal to be without prejudice).[7]

Here, that Plaintiff alleges that the **one** Collection Letter from NACS, not AdventHealth, made him visibly upset and emotionally distraught, causing to have to sit because of the visceral reaction, and subjected him to pain and suffering. (Compl., ¶ 56-57). The Plaintiff also claims that the one Collection Letter wasted more than two hours of his time, including at least five minutes reading and reviewing the Collection Letter, ten minutes reeling in immediate response to the Collection Letter, more than thirty minutes trying to understand why Plaintiff was the target of wrongful and otherwise unlawful collection activity, more than fifteen minutes deliberating what to do about the Collection Letter on at least three separate occasions, and more than thirty minutes providing a copy of the Collection Letter to Plaintiff's workers' compensation attorney. (Compl., ¶ 58-64). Finally, the Plaintiff also claims that the Collection Letter caused Plaintiff to incur costs and other expenses in the confines of Plaintiff's workers' compensation case. (Compl., ¶ 65).[8]

---

[7] See also *Toney v. Advantage Chrysler Dodge Jeep, Inc.*, 2021-CA-002428 (Fla. 9th Cir. February 24, 2022) (Denying Plaintiff's class certification under the TCPA because the plaintiff failed to make the injury in fact showing necessary to support standing beyond an injury that is purely legal).

[8] Presumably, Plaintiff's workers compensation counsel advised not to pay and therefore the Plaintiff never even relied on the statements he now claims to have caused him injury.

The law demands more of a plaintiff who purports to sue for violations of consumer protection statutes. Under the reasoning of *Spokeo (*and as followed in Florida by *Pet Supermarket)*, this action must be dismissed for lack of standing. 578 U.S. 330, (2016) (holding that "a bare procedural violation, divorced from any concrete harm" does not confer standing); *Muransky v. Godiva Chocolatier, Inc.*, 979 F. 3d 917, 936 (11th Cir. 2020) ("Although the receipt violated the law because it contained too many digits, [Appellant] has alleged no concrete harm or material risk of harm stemming from the violation. Because this amounts to nothing more than a 'bare procedural violation, divorced from any concrete harm,' [Appellant] has failed to allege that he has standing to bring this lawsuit." (quoting *Spokeo*, 578 U.S. at 341, 136 S.Ct. 1540))[9], *See Pucillo v. Nat'l Credit Systems, Inc.*, 66 F.4th 634 (7th Cir. 2023)(a plaintiff must show a harm beyond emotional response); *Perez v. Golden Trust Insurance, Inc.*, 470 F. Supp. 3d 1327 (S.D. Fla. 2020)(the plaintiff received two text messages over the course of four days, plaintiff lacked a concrete injury where plaintiff wasted 60 seconds of his time reviewing the messages, causing aggravation and intrusion, wasted 7 minutes researching defendant and the source of the messages on the internet, and wasted 5 minutes locating and retaining counsel for this case in order to stop defendant's unwanted calls), *Lawson v. Visionworks of Am., Inc.*, 2023 WL 2653418

---

[9] In *Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023), the 11th Circuit found standing based on receipt of an unwanted text message because it shared a close relationship with the harm underlying the tort of intrusion upon seclusion. However, here, the Plaintiff doesn't even attempt to plead a common law tort beyond the mere technical statutory violation.

(M.D. Fla. 2023)(dismissing TCPA case because the bare allegation of damages including invasion of privacy, aggravation, and intrusion on seclusion were insufficient to establish standing; Plaintiff alleged he suffered a cumulative waste of time of 2 minutes over 5 months is qualitatively insufficient to establish a concrete harm); *Preisler v. Eastpoint Recovery Group, Inc.*, 2021 WL 2110794 (S.D. Fla. 2021)(dismissing FCDPA complaint where plaintiff could not rely solely on his feelings of distress, confusion, or anxiety to fabricate concrete injury and such conjectural harms cannot satisfy the threshold for standing).

Thus, under either the Florida or Federal pleading standard, Plaintiff has not alleged a concrete injury and does not have standing to sue and the claims against AdventHealth should be dismissed.

## CONCLUSION

Based on the foregoing, the Court should dismiss Counts 3 and 4 of the Complaint. If dismissal is with prejudice, the Court should award AdventHealth its attorneys' fees and costs pursuant to section 559.77(2), *Florida Statutes*.

*/s/ John M. Brennan, Jr.*
JOHN M. BRENNAN, JR.
Florida Bar No. 098456
Primary E-Mail Address:
Jack.Brennan@Gray-Robinson.com
Secondary E-Mail Address:
Nicole.Bradley-Shirley@Gray-Robinson.com
GrayRobinson, P.A.
301 E. Pine Street, Suite 1400
Post Office Box 3068
Orlando, Florida 32802-3068
(407) 843-8880 Telephone
(407) 244-5690 Facsimile
*Attorneys For Defendant, AdventHealth*

## RULE 3.01(g) CERTIFICATE OF GOOD FAITH CONFERRAL

I HEREBY CERTIFY, that undersigned counsel conferred with Plaintiff's Counsel Thomas Patti on May 22, 2026, with respect to the relief requested in this Motion. However, the parties did not reach an agreement on the resolution of this Motion.

*/s/ John M. Brennan, Jr.*
JOHN M. BRENNAN, JR.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 22, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ John M. Brennan, Jr.*
JOHN M. BRENNAN, JR.

22